Gretchen M. Nelson (State Bar No. 112566)
Carlos F. Llinás Negret (State Bar No. 284746)
**NELSON & FRAENKEL LLP**
601 South Figueroa St., Suite 2050
Los Angeles, CA 90017
Tel.: 213-622-6469
Fax: 213-622-6019
Email: cllinas@nflawfirm.com
Email: gnelson@nflawfirm.com

*Attorneys for Plaintiffs Patti Berg, Melissa Juergens,*
*and the Estate of Gregg Juergens*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
### IN ADMIRALTY

| | |
|---|---|
| MELISSA JUERGENS, individually, and as Administrator of the ESTATE OF GREGG JUERGENS; PATTI BERG, Individually, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA <br><br> Defendants. | CASE NO.: '22CV1289 LL    BLM <br><br> **COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES UNDER THE SUITS IN ADMIRALTY ACT AND PUBLIC VESSELS ACT** |

## COMPLAINT

MELISSA JUERGENS, individually, and as Administrator of the ESTATE OF GREGG JUERGENS; PATTI BERG, individually ("Plaintiffs), by and through their undersigned attorneys, file their Complaint against the UNITED STATES OF AMERICA, and alleges as follows:

## JURISDICTION

1. This Court has subject matter jurisdiction over the Plaintiffs claims against the UNITED STATES OF AMERICA, pursuant to 28 U.S.C. § 1333 and Fed.R.Civ.P. 9(h). Plaintiffs bring this action against the UNITED STATES OF AMERICA, pursuant to the 46 U.S.C. §30903

(commonly known as the "Suits in Admiralty Act") and 46 U.S.C. §31102 (commonly known as the "Public Vessels Act") waiving sovereign immunity in cases in which a person is harmed by a vessel owned by the United States.

**VENUE**

2. Venue is properly laid in this Court under 28 U.S.C. § 1391(b)(2) in that Defendant's acts and omissions complained of herein occurred within the federal judicial district of this Honorable Court.

**PARTIES**

3. Plaintiff MELISSA JUERGENS is, and at all relevant times was, an individual and resident of the State of Washington. Plaintiff MELISSA JUERGENS is decedent GREGG JUERGENS' surviving daughter.

4. Plaintiff PATTI BERG is, and at all relevant times was, an individual and resident of the State of Washington. Plaintiff PATTI BERG is decedent GREGG JUERGENS' surviving registered domestic partner.

5. Decedent GREGG JUERGENS was at all relevant times an individual and resident of the State of Washington. At all relevant times Decedent GREGG JUERGENS was a seaman aboard the vessel R/V ROGER REVELLE, tasked with the operation and maintenance of radar equipment. In the alternative, and solely to the extent the finder of fact determines that Decedent GREGG JUERGENS was neither a seaman (as defined by the Jones Act, 46 U.S.C. §30104, and the General Maritime Law of the United States), nor a *Sieracki* seaman (as defined by *Shipping Co. v. Sieracki*, 328 U.S. 85 (1946)); Plaintiffs allege Decedent GREGG JUERGENS was a "passenger for hire" aboard the vessel R/V ROGER REVELLE, as that phrase is used in 33 CFR §101.105, and within the meaning of *Yamaha Motor Corporation, U.S.A. v. Calhoun*, 516 U.S. 199, 215 (1996).

6. At all times material hereto, the UNITED STATES NAVY (hereinafter "NAVY") was and still is a military, multi-mission, maritime service within the Department of Defense, one of the five armed services of Defendant UNITED STATES OF AMERICA, and an "agent of the UNITED STATES" within the meaning of 46 U.S.C. §30904. As such the UNITED STATES OF

AMERICA is designated Defendant herein ("UNITED STATES"). The UNITED STATES OF AMERICA is, and was at all relevant times, the owner of the R/V ROGER REVELLE.

**GENERAL ALLEGATIONS**

7. The incident which gave rise to this lawsuit occurred upon the navigable waters of the Pacific Ocean within the territorial waters of the State of California, while the vessel R/V ROGER REVELLE was anchored at 297 Rosecrans Street in San Diego, California.

8. At all times material hereto, the R/V ROGER REVELLE is, and was at all relevant times, an auxiliary general-purpose research vessel (AGOR) operated under charter agreement with Office of Naval Research as part of the University-National Oceanographic Laboratory System (UNOLS) fleet.

9. At all times material hereto, Defendant UNITED STATES owned, operated maintained and/or controlled the R/V ROGER REVELLE.

10. At all times material hereto, all charterers of the R/V ROGER REVELLE, were agents, apparent agents, servants, and/or joint venturers of Defendant, and were, as such, acting within the course of and scope of the authority of their agency.

11. On or about October 16, 2020, David Murline was employed as Captain and Medical Officer aboard the R/V ROGER REVELLE (hereinafter "Captain-Medic Murline").

12. At all times material hereto, Captain-Medic Murline was an agent, apparent agent, servant, employee, assistant, and consultant of Defendant UNITED STATES, and was, as such, acting within the course of and scope of the authority of his agency and employment.

13. At all times material, on October 16, 2020, during his interactions with Decedent GREGG JUERGENS and the rest of the crew, Captain-Medic Murline acted within the course and scope of his employment and agency relationship with the R/V ROGER REVELLE, Defendant UNITED STATES, and Defendant's agents.

14. Defendant UNITED STATES, when acting as principal, was negligent and careless in the selection and hiring of Captain-Medic Murline and every other agent, apparent agent, charterer, servant, employee, assistant and/or consultant responsible in some actionable matter for

the events and happenings referred to herein, including Decedent GREGG JUERGENS' injuries and death.

15. On or about October 16, 2020, Decedent GREGG JUERGENS embarked on the R/V ROGER REVELLE.

16. Prior to his embarkation on the R/V ROGER REVELLE, Decedent GREGG JUERGENS had no significant medical history.

17. At all times material, Decedent GREGG JUERGENS was employed as a seafarer in the service of vessel R/V ROGER REVELLE.

18. Decedent GREGG JUERGENS' work on the vessel was not as "scientific personnel." Instead, Decedent GREGG JUERGENS' service on the vessel was to assist in the vessel's operation and navigation, as an engineer tasked with maintenance of radar equipment.

19. On the evening of October 16, 2020, Decedent GREGG JUERGENS ate dinner with the crew. A short time later, Decedent GREGG JUERGENS complained to Captain-Medic Murline of sharp chest pains, a numb hand, and symptoms of acid reflux. After examination, he was further noted to have elevated blood pressure. He also had symptoms of nausea and vomiting following their encounter.

20. Upon information and belief, Captain-Medic Murline dismissed Decedent's symptoms as food intolerance, sent him back to his bunk and instructed him to sleep.

21. On the morning of October 17, 2020, the ship's crew entered Decedent GREGG JUERGENS's cabin to check on him and found him lying in bed, unresponsive and not breathing. Crew then called 9-1-1 for assistance. At 0754 paramedics arrived on the scene, evaluated Decedent GREGG JUERGENS and confirmed his death. A subsequent autopsy report revealed his cause of death was cardiopulmonary arrest, colloquially known as a 'heart attack.'

22. Notably, at the time Decedent GREGG JUERGENS reported his symptoms to Captain-Medic Murline, the R/V ROGER REVELLE was within 10 miles of two renowned hospitals.

23. At all relevant times, the symptoms Decedent GREGG JUERGENS complained of to Captain-Medic Murline were classic for an acute coronary syndrome and should have been

recognized as such by anyone performing the role of a ship's medic. Captain-Medic Murline did not rule out any heart related issues, and assumed the symptoms were related to a spicy dinner.

24. At all relevant times, Decedent GREGG JUERGENS had the following classic symptoms and complaints that should have alerted Captain-Medic Murline he was having a cardiac event (acute coronary syndrome): chest pain, numbness in his hand, elevated blood pressure, nausea, and vomiting. These classic symptoms of myocardial ischemia are well established in medical science.

25. Based on Decedent GREGG JUERGENS' complaints, he was experiencing an acute lack of blood supply to the heart resulting in heart cell injury and death.

26. At all relevant times, Captain-Medic Murline should have recognized the classic symptoms of myocardial ischemia/infarction and immediately called 9-1-1 to transfer Decedent GREGG JUERGENS for acute medical care.

27. Heart attacks are a time sensitive condition that require early diagnosis and treatment. This means that delayed diagnosis and treatment of this condition leads to increased morbidity and mortality. Had Decedent GREGG JUERGENS been immediately referred for care on the night of October 16, 2020, the medical care team at the hospital would have been able to reestablish adequate blood flow for the heart thus preventing his sudden death.

**FIRST CAUSE OF ACTION**
**WRONGFUL DEATH AND SURVIVAL ACTION**
**PUBLIC VESSELS ACT**

28. Plaintiffs re-allege, adopt, and incorporate by reference the allegations in the paragraphs 1 - 27 as though alleged originally herein.

29. The Public Vessels Act provides for an action against the United States for "damages caused by a public vessel of the United States" 46 U.S.C. §§31102 (a)(1)-(a)(2), including when the actual cause of the harm "is the negligence of the personnel operating the ship." *Canadian Aviator v. United States,* 324 U.S. 215, 224-225 (1945).

30. The doctrine of unseaworthiness is a feature of the General Maritime Law of the United States, imposing upon the vessel owner the absolute and nondelegable duty to provide its

seamen with a vessel that is reasonably fit for its intended purpose. The warranty of seaworthiness extends to all parts of the vessel and to all facets of its operation, imposing upon the vessel operator a nondelegable duty to provide a competent captain and crew.

31. Pursuant to the General Maritime Law of the United States, Defendant owed Decedent GREGG JUERGENS an absolute and nondelegable duty to provide a seaworthy vessel, including a nondelegable duty to provide a competent captain and shipboard medic.

32. Defendant owed Decedent GREGG JUERGENS an absolute and nondelegable duty to provide a seaworthy vessel because he was a seaman. In his capacity as radar maintainer and operator on the R/V ROGER REVELLE, Decedent GREGG JUERGENS' duties contributed to the function of a vessel in navigation and the accomplishment of its mission. These contributions were substantial both in duration and nature. Alternatively, Defendant owed Decedent GREGG JUERGENS an absolute and nondelegable duty to provide a seaworthy vessel because he was a *Sieracki* Seaman, as defined in *Seas Shipping Co. v. Sieracki*, 328 U.S. 85 (1946).

33. Additionally, Defendant owed a duty to Decedent GREGG JUERGENS of reasonable care, including general concepts of prudent seamanship and reasonable care.

34. As a matter of law, an injured seaman, should not have to speculate on when the unseaworthy condition of a vessel arose or whether a valid bareboat charter existed. No continuing purpose is accomplished by requiring [a seaman] to seek out and attach the vessel. If injured by its unseaworthiness, he should be able to sue its owner. The allocation of ultimate liability should be the responsibility of the owner and charterer, who "can sort out which between them will bear the final cost of recovery." *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 184 (5th Cir. 1981). Accordingly, Decedent GREGG JUERGENS, who was a seaman, has a recourse *in personam* against the UNITED STATES as owner of an unseaworthy vessel, without regard to whether the owner or charterer is responsible for the vessel's condition. *Id.*

35. Decedent GREGG JUERGENS' resulting injuries and death are due to Defendant's acts and omissions, as follows:

a. Failing to conduct an appropriate investigation into the background of the shipboard medic to determine if he was qualified to render emergency medicine, including diagnosis and evaluation of heart attacks;

b. Failing to ensure that shipboard medical personnel had appropriate training and experience in emergency medicine, including evaluation of heart attacks;

c. Failing to ensure shipboard medical personnel were qualified and/or sufficiently trained and experienced in the use of diagnostic equipment aboard the vessel, which could have been used for diagnostic testing and evaluation of Decedent GREGG JUERGENS' condition;

d. Failing to provide appropriate training and procedures to the shipboard medic for use of the ship's equipment for diagnostic testing;

e. Failing to ensure the shipboard medic and master had appropriate training and experience in timely passenger evacuation during medical emergencies;

f. Allowing a shipboard medic to work on the vessel, without providing adequate training and procedures for triage and referral to shore side facilities or physicians;

g. Allowing a shipboard medic and master to work on the vessel without providing adequate training and procedures for timely passenger evacuation during medical emergencies;

h. Failing to require a shipboard medic capable of identifying common medical emergencies, including heart attacks;

i. Failing to use reasonable care to ensure the vessel had competent and adequately trained crew, including individuals holding themselves out as ship's medics and masters;

j. Failing to train the vessel's shipboard medic in emergency medicine, including identifying common medical emergencies such as heart attacks;

k. Failing to require the adoption, implementation and/or enforcement of policies and procedures to ensure adequate training of the vessel's shipboard medic in emergency medicine, including identifying common medical emergencies such as heart attacks;

7

l. Failing to arrange, provide and pay for prompt, adequate and complete medical care and treatment for Decedent GREGG JUERGENS;

m. Failing to require the adoption, implementation and/or enforcement of policies and procedures to ensure passengers and crew on board the vessel receive prompt, proper and adequate medical care;

n. Failing to timely disembark Decedent GREGG JUERGENS from the vessel, and transfer Decedent GREGG JUERGENS to a medical facility capable of providing him with prompt, proper and adequate medical care;

o. Failing to require adoption, implementation and/or enforcement of policies and procedures to ensure timely disembarkation and transfer of passengers and crew to medical facilities in the event of heart attacks and other common medical emergencies;

p. Failing to properly assess the condition of Decedent GREGG JUERGENS;

q. Failing to timely diagnose Decedent GREGG JUERGENS' medical condition;

r. Failing to adequately treat Decedent GREGG JUERGENS' medical condition;

s. Failing to assess Decedent GREGG JUERGENS' degree of condition;

t. Failing to obtain consultations with appropriate specialists;

u. Failing to properly monitor Decedent GREGG JUERGENS' medical condition;

v. Failing to evacuate Decedent GREGG JUERGENS from the vessel for further care in a timely manner;

w. Failing to have adequate diagnostic equipment aboard the vessel, which could have been used for diagnostic testing and evaluation of Decedent GREGG JUERGENS' condition;

x. Failing to promptly provide Decedent GREGG JUERGENS with proper and adequate medical care and attention;

y. Failing to adequately advise Decedent GREGG JUERGENS regarding his medical condition;

z. Failing to recommend appropriate medical care;

aa. Failing to stabilize Decedent GREGG JUERGENS' medical condition;

  bb. Allowing Decedent GREGG JUERGENS' medical condition to significantly deteriorate;

  cc. Allowing Decedent GREGG JUERGENS' medical condition to deteriorate to the point where he required emergency medical treatment;

  dd. Failing to recommend an adequate and proper medical facility to treat GREGG JUERGENS' emergency medical conditions;

  ee. Failing to utilize available medical testing and/or available medical equipment with an adequate frequency during the medical care and treatment of Decedent GREGG JUERGENS;

  ff. Failing to utilize telephone and/or video consultations with specialists during the medical care and treatment of GREG JUERGENS;

  gg. Deviating from the standard of care for patients in Decedent GREGG JUERGENS' circumstances who had suffered a cardiac event (acute coronary syndrome).

36. Had Decedent GREGG JUERGENS received the appropriate care and treatment, it is more likely than not that he would have survived.

37. As a result of the acts and omissions of Defendant, Decedent GREGG JUERGENS was injured and died.

38. As a result of the acts and omissions of Defendant, Decedent GREGG JUERGENS experienced conscious physical pain and mental suffering prior to his death.  Decedent GREGG JUERGENS was placed in great fear of his own life and own physical well-being and consciously suffered extreme, severe, and relentless mental and emotional anguish, terror, and physical pain, and continued to suffer such terror, pain and anguish for a substantial period of time until he died, all to the Decedent's Estate's non-pecuniary damage in an amount to be proven at the time of trial.

39. As a result of the acts and omissions of Defendants, the Estate of GREGG JUERGENS has become obligated to pay significant medical bills and other pecuniary expenses, all to its pecuniary damage in amount to be proven at the time of trial.

40. As a result of the acts and omissions of Defendants, Plaintiff PATTI BERG has lost in the past, and will continue to suffer in the future: a) the financial support Decedent GREGG

JUERGENS would have contributed to Plaintiff PATTI BERG during either the life expectancy that Decedent GREGG JUERGENS had before his death or PATTI BERG's life expectancy, whichever is shorter; b) the loss of gifts or benefits that PATTI BERG would have expected to receive from Decedent GREGG JUERGENS; c) funeral and burial expenses; and d) the reasonable value of household services that Decedent GREGG JUERGENS would have provided. All to her pecuniary damage in amount to be proven at the time of trial.

41.  As a result of the acts and omissions of Defendants, Plaintiff MELISSA JUERGENS has lost in the past, and will continue to suffer in the future: a) the financial support Decedent GREGG JUERGENS would have contributed to Plaintiff MELISSA JUERGENS during either the life expectancy that Decedent GREGG JUERGENS had before his death or MELISSA JUERGENS' life expectancy, whichever is shorter; b) the loss of gifts or benefits that MELISSA JUERGENS would have expected to receive from Decedent GREGG JUERGENS; c) funeral and burial expenses; and d) the reasonable value of household services that Decedent GREGG JUERGENS would have provided. All to her pecuniary damage in amount to be proven at the time of trial.

42.  As a result of the acts and omissions of Defendants, the heirs, beneficiaries and successors in interest of the Estate of GREGG JUERGENS lost in the past, and will continue to suffer in the future: a) the financial support Decedent GREGG JUERGENS would have contributed to his heirs, beneficiaries and successors during either the life expectancy that Decedent GREGG JUERGENS had before his death; b) the loss of gifts or benefits that Decedent GREGG JUERGENS' heirs, beneficiaries and successors would have expected to receive from Decedent GREGG JUERGENS; c) funeral and burial expenses; and d) the reasonable value of household services that Decedent GREGG JUERGENS would have provided. All to their pecuniary damage in amount to be proven at the time of trial.

43.  As a result of the acts and omissions of Defendants, Plaintiff MELISSA JUERGENS has lost in the past, and will continue to suffer in the future non-pecuniary damages, which she is entitled to claim, pursuant to the General Maritime Law and in particular *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375 (1970). Plaintiff MELISSA JUERGENS' non-pecuniary

losses include a) the loss of Decedent GREGG JUERGENS' love, companionship, comfort, care assistance, protection, affection, moral support, and b) the loss of Decedent's training and guidance. All to her non-pecuniary damage in amount to be proven at the time of trial.

44. As a result of the acts and omissions of Defendants, Plaintiff PATTI BERG has lost in the past, and will continue to suffer in the future non-pecuniary damages, which she is entitled to claim, pursuant to the General Maritime Law and in particular *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375 (1970). Plaintiff PATTI BERG's non-pecuniary losses include a) the loss of Decedent GREGG JUERGENS' love, companionship, comfort, care assistance, protection, affection, society, moral support, b) the loss of Decedent's training and guidance; and c) the loss of the enjoyment of sexual relations. All to her non-pecuniary damage in amount to be proven at the time of trial.

45. As a result of the acts and omissions of Defendants, the heirs, beneficiaries and successors in interest of the Estate of GREGG JUERGENS lost in the past, and will continue to suffer in the future non-pecuniary damages, which they are entitled to claim, pursuant to the General Maritime Law and in particular *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375 (1970). These losses include loss of love, society, affection, care, comfort and consortium, all to their non-pecuniary damage in an amount to be proven at the time of trial.

**SECOND CAUSE OF ACTION**
**WRONGFUL DEATH AND SURVIVAL ACTION**
**SUITS IN ADMIRALTY ACT**

46. Plaintiffs re-allege, adopt, and incorporate by reference the allegations in the paragraphs 1 - 27 as though alleged originally herein.

47. The Suits in Admiralty Act waives sovereign immunity for the United States in cases in which a private person, in like circumstances, could be sued in admiralty. 46 U.S.C. §30903. Accordingly, if a vessel is owned by the United States, and someone is harmed by the vessel or one of its employees, and the harm is one for which, if the vessel were privately owned, the harmed individual could have sued its owner in admiralty, then the person can bring that claim against the United States. *Ali v. Rogers*, 780 F.3d 1229, 1233 (9th Cir. 2015).

48. The doctrine of unseaworthiness is a feature of the General Maritime Law of the United States, imposing upon the vessel owner the absolute and nondelegable duty to provide its seamen with a vessel that is reasonably fit for its intended purpose. The warranty of seaworthiness extends to all parts of the vessel and to all facets of its operation, imposing upon the vessel operator a nondelegable duty to provide a competent captain and crew.

49. Pursuant to the General Maritime Law of the United States, Defendant owed Decedent GREGG JUERGENS an absolute and nondelegable duty to provide a seaworthy vessel, including a nondelegable duty to provide a competent captain and shipboard medic.

50. Defendant owed Decedent GREGG JUERGENS an absolute and nondelegable duty to provide a seaworthy vessel because he was a seaman. In his capacity as radar maintainer and operator on the R/V ROGER REVELLE, Decedent GREGG JUERGENS' duties contributed to the function of a vessel in navigation and the accomplishment of its mission. These contributions were substantial both in duration and nature. Alternatively, Defendant owed Decedent GREGG JUERGENS an absolute and nondelegable duty to provide a seaworthy vessel because he was a *Sieracki* Seaman, as defined in *Seas Shipping Co. v. Sieracki*, 328 U.S. 85 (1946).

51. Additionally, Defendant owed a duty to Decedent GREGG JUERGENS of reasonable care, including general concepts of prudent seamanship and reasonable care.

52. As a matter of law, an injured seaman, should not have to speculate on when the unseaworthy condition of a vessel arose or whether a valid bareboat charter existed. No continuing purpose is accomplished by requiring [a seaman] to seek out and attach the vessel. If injured by its unseaworthiness, he should be able to sue its owner. The allocation of ultimate liability should be the responsibility of the owner and charterer, who "can sort out which between them will bear the final cost of recovery." *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 184 (5th Cir. 1981). Accordingly, Decedent GREGG JUERGENS, who was a seaman, has a recourse *in personam* against the UNITED STATES as owner of an unseaworthy vessel, without regard to whether the owner or charterer is responsible for the vessel's condition. *Id.*

53. Decedent GREGG JUERGENS' resulting injuries and death are due to Defendant's acts and omissions, as follows:

a. Failing to conduct an appropriate investigation into the background of the shipboard medic to determine if he was qualified to render emergency medicine, including diagnosis and evaluation of heart attacks;

b. Failing to ensure that shipboard medical personnel had appropriate training and experience in emergency medicine, including evaluation of heart attacks;

c. Failing to ensure shipboard medical personnel were qualified and/or sufficiently trained and experienced in the use of diagnostic equipment aboard the vessel, which could have been used for diagnostic testing and evaluation of Decedent GREGG JUERGENS' condition;

d. Failing to provide appropriate training and procedures to the shipboard medic for use of the ship's equipment for diagnostic testing;

e. Failing to ensure the shipboard medic and master had appropriate training and experience in timely passenger evacuation during medical emergencies;

f. Allowing a shipboard medic to work on the vessel, without providing adequate training and procedures for triage and referral to shore side facilities or physicians;

g. Allowing a shipboard medic and master to work on the vessel without providing adequate training and procedures for timely passenger evacuation during medical emergencies;

h. Failing to require a shipboard medic capable of identifying common medical emergencies, including heart attacks;

i. Failing to use reasonable care to ensure the vessel had competent and adequately trained crew, including individuals holding themselves out as ship's medics and masters;

j. Failing to train the vessel's shipboard medic in emergency medicine, including identifying common medical emergencies such as heart attacks;

k. Failing to require the adoption, implementation and/or enforcement of policies and procedures to ensure adequate training of the vessel's shipboard medic in emergency medicine, including identifying common medical emergencies such as heart attacks;

l. Failing to arrange, provide and pay for prompt, adequate and complete medical care and treatment for Decedent GREGG JUERGENS;

m. Failing to require the adoption, implementation and/or enforcement of policies and procedures to ensure passengers and crew on board the vessel receive prompt, proper and adequate medical care;

n. Failing to timely disembark Decedent GREGG JUERGENS from the vessel, and transfer Decedent GREGG JUERGENS to a medical facility capable of providing him with prompt, proper and adequate medical care;

o. Failing to require adoption, implementation and/or enforcement of policies and procedures to ensure timely disembarkation and transfer of passengers and crew to medical facilities in the event of heart attacks and other common medical emergencies;

p. Failing to properly assess the condition of Decedent GREGG JUERGENS;

q. Failing to timely diagnose Decedent GREGG JUERGENS' medical condition;

r. Failing to adequately treat Decedent GREGG JUERGENS' medical condition;

s. Failing to assess Decedent GREGG JUERGENS' degree of condition;

t. Failing to obtain consultations with appropriate specialists;

u. Failing to properly monitor Decedent GREGG JUERGENS' medical condition;

v. Failing to evacuate Decedent GREGG JUERGENS from the vessel for further care in a timely manner;

w. Failing to have adequate diagnostic equipment aboard the vessel, which could have been used for diagnostic testing and evaluation of Decedent GREGG JUERGENS' condition;

x. Failing to promptly provide Decedent GREGG JUERGENS with proper and adequate medical care and attention;

y. Failing to adequately advise Decedent GREGG JUERGENS regarding his medical condition;

z. Failing to recommend appropriate medical care;

aa. Failing to stabilize Decedent GREGG JUERGENS' medical condition;

bb. Allowing Decedent GREGG JUERGENS' medical condition to significantly deteriorate;

cc. Allowing Decedent GREGG JUERGENS' medical condition to deteriorate to the point where he required emergency medical treatment;

dd. Failing to recommend an adequate and proper medical facility to treat GREGG JUERGENS' emergency medical conditions;

ee. Failing to utilize available medical testing and/or available medical equipment with an adequate frequency during the medical care and treatment of Decedent GREGG JUERGENS;

ff. Failing to utilize telephone and/or video consultations with specialists during the medical care and treatment of GREG JUERGENS;

gg. Deviating from the standard of care for patients in Decedent GREGG JUERGENS' circumstances who had suffered a cardiac event (acute coronary syndrome).

54. Had Decedent GREGG JUERGENS received the appropriate care and treatment, it is more likely than not that he would have survived.

55. As a result of the acts and omissions of Defendant, Decedent GREGG JUERGENS was injured and died.

56. As a result of the acts and omissions of Defendant, Decedent GREGG JUERGENS experienced conscious physical pain and mental suffering prior to his death. Decedent GREGG JUERGENS was placed in great fear of his own life and own physical well-being and consciously suffered extreme, severe, and relentless mental and emotional anguish, terror, and physical pain, and continued to suffer such terror, pain and anguish for a substantial period of time until he died, all to the Decedent's Estate's non-pecuniary damage in an amount to be proven at the time of trial.

1       57.    As a result of the acts and omissions of Defendants, the Estate of GREGG JUERGENS has become obligated to pay significant medical bills and other pecuniary expenses, all to its pecuniary damage in amount to be proven at the time of trial.

      58.    As a result of the acts and omissions of Defendants, Plaintiff PATTI BERG has lost in the past, and will continue to suffer in the future: a) the financial support Decedent GREGG JUERGENS would have contributed to Plaintiff PATTI BERG during either the life expectancy that Decedent GREGG JUERGENS had before his death or PATTI BERG's life expectancy, whichever is shorter; b) the loss of gifts or benefits that PATTI BERG would have expected to receive from Decedent GREGG JUERGENS; c) funeral and burial expenses; and d) the reasonable value of household services that Decedent GREGG JUERGENS would have provided. All to her pecuniary damage in amount to be proven at the time of trial.

      59.    As a result of the acts and omissions of Defendants, Plaintiff MELISSA JUERGENS has lost in the past, and will continue to suffer in the future: a) the financial support Decedent GREGG JUERGENS would have contributed to Plaintiff MELISSA JUERGENS during either the life expectancy that Decedent GREGG JUERGENS had before his death or MELISSA JUERGENS' life expectancy, whichever is shorter; b) the loss of gifts or benefits that MELISSA JUERGENS would have expected to receive from Decedent GREGG JUERGENS; c) funeral and burial expenses; and d) the reasonable value of household services that Decedent GREGG JUERGENS would have provided. All to her pecuniary damage in amount to be proven at the time of trial.

      60.    As a result of the acts and omissions of Defendants, the heirs, beneficiaries and successors in interest of the Estate of GREGG JUERGENS lost in the past, and will continue to suffer in the future: a) the financial support Decedent GREGG JUERGENS would have contributed to his heirs, beneficiaries and successors during either the life expectancy that Decedent GREGG JUERGENS had before his death; b) the loss of gifts or benefits that Decedent GREGG JUERGENS' heirs, beneficiaries and successors would have expected to receive from Decedent GREGG JUERGENS; c) funeral and burial expenses; and d) the reasonable value of

household services that Decedent GREGG JUERGENS would have provided. All to their pecuniary damage in amount to be proven at the time of trial.

61.  As a result of the acts and omissions of Defendants, Plaintiff MELISSA JUERGENS has lost in the past, and will continue to suffer in the future non-pecuniary damages, which she is entitled to claim, pursuant to the General Maritime Law and in particular *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375 (1970). Plaintiff MELISSA JUERGENS' non-pecuniary losses include a) the loss of Decedent GREGG JUERGENS' love, companionship, comfort, care assistance, protection, affection, moral support, and b) the loss of Decedent's training and guidance. All to her non-pecuniary damage in amount to be proven at the time of trial.

62.  As a result of the acts and omissions of Defendants, Plaintiff PATTI BERG has lost in the past, and will continue to suffer in the future non-pecuniary damages, which she is entitled to claim, pursuant to the General Maritime Law and in particular *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375 (1970). Plaintiff PATTI BERG's non-pecuniary losses include a) the loss of Decedent GREGG JUERGENS' love, companionship, comfort, care assistance, protection, affection, society, moral support, b) the loss of Decedent's training and guidance; and c) the loss of the enjoyment of sexual relations. All to her non-pecuniary damage in amount to be proven at the time of trial.

63.  As a result of the acts and omissions of Defendants, the heirs, beneficiaries and successors in interest of the Estate of GREGG JUERGENS lost in the past, and will continue to suffer in the future non-pecuniary damages, which they are entitled to claim, pursuant to the General Maritime Law and in particular *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375 (1970). These losses include love, society, affection, care, comfort and consortium, all to their non-pecuniary damage in an amount to be proven at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.  To the Estate of GREGG JUERGENS damages for experiencing conscious

1  physical pain and mental suffering prior to his death, including being placed in great fear of his
2  own life and own physical well-being and consciously suffering extreme, severe, and relentless
3  mental and emotional anguish, terror, and physical pain, and continuing to suffer such terror,
4  pain and anguish for a substantial period of time until he died, all to the Decedent's Estate's non-
5  pecuniary damage in an amount to be prove at the time of trial.

6      2.    To the Estate of GREGG JUERGENS medical bills and other pecuniary expenses,
7  all to its pecuniary damage in amount to be proven at the time of trial.

8      3.    To PATTI BERG, individually: a) financial support Decedent GREGG
9  JUERGENS would have contributed to Plaintiff PATTI BERG during either the life expectancy
10 that Decedent GREGG JUERGENS had before his death or PATTI BERG's life expectancy,
11 whichever is shorter; b) the loss of gifts or benefits that PATTI BERG would have expected to
12 receive from Decedent GREGG JUERGENS; c) funeral and burial expenses; and d) the
13 reasonable value of household services that Decedent GREGG JUERGENS would have
   provided. All to her pecuniary damage in amount to be proven at the time of trial.

14     4.    To PATTI BERG, individually, past and future non-pecuniary damages, which she
15 is entitled to claim, pursuant to the General Maritime Law and in particular *Moragne v. States*
16 *Marine Lines, Inc.*, 398 U.S. 375 (1970), including: a) the loss of Decedent GREGG
17 JUERGENS' love, companionship, comfort, care assistance, protection, affection, society, moral
18 support, b) the loss of Decedent's training and guidance; and c) the loss of the enjoyment of
19 sexual relations. All to her non-pecuniary damage in amount to be proven at the time of trial.

20     5.    To MELISSA JUERGENS, individually: a) financial support Decedent GREGG
21 JUERGENS would have contributed to Plaintiff MELISSA JUERGENS during either the life
22 expectancy that Decedent GREGG JUERGENS had before his death or MELISSA JUERGENS'
23 life expectancy, whichever is shorter; b) the loss of gifts or benefits that MELISSA JUERGENS
24 would have expected to receive from Decedent GREGG JUERGENS; c) funeral and burial
25 expenses; and d) the reasonable value of household services that Decedent GREGG JUERGENS
26 would have provided. All to her pecuniary damage in amount to be proven at the time of trial.

27     6.    To MELISSA JUERGENS, individually, past and future non-pecuniary damages,
28 which she is entitled to claim, pursuant to the General Maritime Law and in particular *Moragne*

*v. States Marine Lines, Inc.*, 398 U.S. 375 (1970), including: a) the loss of Decedent GREGG JUERGENS' love, companionship, comfort, care assistance, protection, affection, society, moral support, and b) the loss of Decedent's training and guidance. All to her non-pecuniary damage in amount to be proven at the time of trial.

7. To the beneficiaries and successors in interest of the Estate of GREGG JUERGENS: a) financial support Decedent GREGG JUERGENS would have contributed to them; b) the loss of gifts or benefits that they would have expected to receive from Decedent GREGG JUERGENS; c) funeral and burial expenses; and d) the reasonable value of household services that Decedent GREGG JUERGENS would have provided. All to their pecuniary damage in amount to be proven at the time of trial.

8. To the beneficiaries and successors in interest of the Estate of GREGG JUERGENS, past and future non-pecuniary damages, pursuant to the General Maritime Law and in particular *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375 (1970), including: a) the loss of Decedent GREGG JUERGENS' love, companionship, comfort, care assistance, protection, affection, society, moral support, and b) the loss of Decedent's training and guidance. All to their non-pecuniary damage in amount to be proven at the time of trial.

9. For such other and further relief as the Court may deem proper.

Date: August 30, 2022,

                                             NELSON & FRAENKEL, LLP

                                             By <u>s/Carlos F. Llinás Negret</u>
                                                  Carlos F. Llinás Negret
                                                  *Attorneys for Plaintiff*